UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAMEY C. ROBERTSON, :
 :
      Petitioner : No. 4:CV-10-0833
 :
  vs. : (Judge Nealon)
 :
PA ATTORNEY GENERAL, :
 :
      Respondent :

**FILED
SCRANTON**
OCT 0 3 2014

PER _____ DEPUTY CLERK

## MEMORANDUM

Petitioner, Jamey Robertson, filed the instant petition for writ of habeas
corpus pursuant to 28 U.S.C. § 2254. He attacks a conviction imposed by the
Court of Common Pleas for Lebanon County, Pennsylvania. (Doc. 1). For the
reasons that follow, the petition will be denied.

I.   **Background**

A portion of the factual and procedural background of this case has been
extracted from the Pennsylvania Superior Court's September 16, 2009,
Memorandum Opinion affirming the denial of Robertson's petition under
Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, et seq.
("PCRA"). See (Doc. 43-26 at 2-7, Memorandum Opinion).

> On October 29, 1999, Appellant was charged with criminal attempt to
> commit homicide, aggravated assault, robbery, possession of an
> instrument of crime, and recklessly endangering another person as a
> result of a brutal attack of Giovanni Amato at the latter's pizza shop

on October 17, 1999.  The pertinent facts have been summarized as follows:

> The Commonwealth presented testimony of Amato describing the attack upon his person. Mr. Amato testified that on the night of October 17, 1999, he was working at his pizza shop. At approximately 8:30 p.m., he was standing at the front counter of the shop near the register when, without warning, he was stabbed in the face from behind. As he attempted to turn around, Mr. Amato was stabbed for the second time in the stomach. After the second knife stab, the assailant demanded money. Mr. Amato tried to open the register, but had difficulty doing so. The assailant then attempted to slash Amato again. Because Mr. Amato drew back from the slashing knife, he sustained only a superficial cut on his neck. Mr. Amato then was able to open the register and the assailant grabbed several twenty-dollar bills from inside the register and fled. Mr. Amato could not provide a detailed description of the person who attacked and robbed him. All that Mr. Amato could provide was that the assailant was male, around six feet tall, dark skinned, and wore a mask and dark jacket.
>
> Lebanon City Police Detectives Daniel Wright and Christopher Rutter also testified on behalf of the Commonwealth. Detective Wright testified that on October 20, 1999, he was notified that anonymous phone calls relating to the case were received at Amato's pizza shop and the police station. The calls were traced to a payphone at Linda's Corner Store. Upon visiting that location, Detective Wright found Shanita Allen and Lori Zechman on the phone with police. Zechman mentioned Appellant's name in connection with the robbery and that he lived in a local apartment, known as 1001 Spruce Park. Detective Wright later ran a driver's license check and verified that Appellant lived at 1001 Spruce Park and was

approximately six feet, one inches in height. Id. at 110. Detective Rutter testified that on October 29, a search warrant was obtained for 1001 Spruce Park. Id. at 124. During the search, several jackets were taken into custody, including a New York Giants football jacket. Id.

Police Officer Bord, on behalf of the Commonwealth, testified that preliminary tests on the Giants jacket indicated that it was stained with blood. The Commonwealth also called Pamela Call, a forensic scientist with the Pennsylvania State Police's DNA Laboratory. Call testified that blood samples from the victim, Amato, matched the DNA from blood stains on the Giants jacket.

Finally, the Commonwealth presented testimony from Michael Allen at trial. Allen testified that on the night in question, Appellant had been at Allen's home, approximately two blocks from Amato's pizza shop, along with Allen's two brothers and another friend. The group was drinking alcohol and smoking marijuana in the basement. At some point, Allen's brothers and the friend left the residence for various reasons, and only Allen and Appellant remained. Appellant said, "Look, I will be back." Allen was not sure of the exact time Appellant left, but believed it was around 7:00 or 8:00 p.m. Allen testified that Appellant was gone for possibly as long as an hour. Appellant returned with money rolled up in a jacket. When questioned about where the money came from, Appellant repeatedly said, "Don't worry about it."

Allen testified that it was odd for Appellant to have that much money. Allen also identified the jacket that he had seen Appellant carrying the night of the robbery as the same Giants jacket that had been found at Appellant's home with bloodstains on it. About two days later, after Allen was questioned by the police, he went to speak with

> Appellant outside of 1001 Spruce Park. Appellant again
> told Allen not to worry about it, but he also told Allen not
> to say anything about that night. Allen told Appellant that
> the police were looking for him and to get out of town.
> That was the last time Allen saw Appellant.

Commonwealth v. Robertson, 874 A.2d 1200, 1205-06 (Pa. Super.
2005) (citations omitted). Appellant became a fugitive and was not
apprehended by law enforcement until several years later. After being
apprehended, on August 6, 2003, a jury found Appellant guilty of all
counts. On September 17, 2003, the trial court imposed an aggregate
sentence of thirty to sixty years imprisonment.

The trial court denied Appellant's timely-filed post-sentence motions
on February 18, 2004. Appellant then filed a timely appeal. On April
26, 2005, this Court affirmed Appellant's judgment of sentence via a
published opinion. Robertson, supra. Appellant did not file a petition
for allowance of appeal with our Supreme Court.

On April 28, 2006, Robertson filed a *pro se* PCRA petition alleging
various claims of ineffectiveness with regard to his trial and appellate
counsel. On June 8, 2006, he filed a motion to amend his petition,
which was granted by the PCRA court. Following the appointment of
PCRA counsel, Appellant was permitted to file a second amended
PCRA petition, which raised seventeen claims of ineffective assistance
of prior counsel. On October 9, 2007, the PCRA court conducted an
evidentiary hearing. At the conclusion of this proceeding, the court
issued an order denying certain claims raised by the Appellant, while
taking the remaining claims under advisement. Thereafter, Appellant
filed an application for supersedeas and a motion to proceed *pro se*.
The PCRA court granted the stay, and scheduled a hearing on the
motion. That hearing, however, was cancelled when Appellant was
not transported to the courthouse from the state correctional facility.
On June 30, 2008, after the parties had filed briefs, the PCRA court
issued an order and opinion denying the remaining PCRA claims.

Appellant filed a *pro se* notice of appeal on July 17, 2008, and PCRA

4

counsel filed a notice of appeal on Appellant's behalf one day later. On July 28, 2008, the PCRA court requested a Rule 1925(b) statement of errors complained of an appeal, Pa.R.A.P. 1925(b), and, on August 7, 2008, PCRA counsel complied. On August 19, 2008, this Court quashed Appellant's *pro se* appeal as duplicative of the appeal filed by PCRA counsel. Approximately one month later, Appellant filed another motion to proceed *pro se*. On November 4, 2008, this Court issued an order directing the PCRA court to conduct a Grazier[1] hearing. The PCRA court conducted the hearing on November 18, 2008, after which the court concluded that Appellant's waiver of counsel met the applicable constitutional standards. Thereafter, PCRA counsel was permitted to withdraw. On December 3, 2008, Appellant filed a supplemental Rule 1925(b) statement, and the PCRA court filed its Rule 1925(a) opinion on December 16, 2008.

Appellant raises the following issues on appeal:

> WHETHER THE PCRA COURT'S DISMISSAL OF [APPELLANT'S] PCRA IS SUPPORTED BY THE RECORD OR OTHERWISE FREE OF LEGAL ERROR WHEN APPELLANT'S COUNSEL WERE INEFFECTIVE AT TRIAL, DIRECT APPEAL, (AND DURING THE PCRA STAGES), OF THIS INSTANT CASE.

> WHETHER THE INEFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL STAGE, THE DIRECT APPEAL STAGE AND PCRA STAGE VIOLATED THE [Strickland v. Washington, 466 U.S. 668 (1984)] STANDARD AND THE 6th & 14th [AMENDMENTS] TO THE U.S. CONSTITUTION.

> WHETHER [THE] PCRA COURT ERRED WHEN IT FAILED TO FIND THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INTERVIEW

---

[1]Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

[APPELLANT'S] MOTHER, WHICH WOULD HAVE
REVEALED THAT SHE COULD TESTIFY THAT
APPELLANT LIVED WITH HER IN NEW JERSEY ON
THE DATE OF THE OFFENSE AND TRIAL
COUNSEL['S] FAILURE TO INTERVIEW CAUSED A
VIOLATION OF SEQUESTRATION AND A
VIOLATION TO THE HEARSAY RULE.

WHETHER THE PCRA COURT ERRED WHEN IT
FAILED TO FIND THAT TRIAL COUNSEL WAS
INEFFECTIVE IN THAT THERE WAS A CONFLICT
OF INTEREST WHICH HE FAILED TO REVEAL TO
APPELLANT, WHICH COUNSEL ONLY [MET]
APPELLANT AT THE PRELIMINARY HEARING
AND WAS UNPREPARED.

WHETHER COUNSEL WAS INEFFECTIVE FOR
FAILING TO CHALLENGE THE SEARCH
WARRANT ON THE BASIS THAT THE
COMMONWEALTH DID NOT HAVE PROBABLE
CAUSE TO OBTAIN SUCH A WARRANT BECAUSE
APPELLANT DID NOT FIT THE DESCRIPTION AND
INFORMANT'S [SIC] GAVE INCONSISTENT
STATEMENTS.

WHETHER [THE] PCRA COURT ERRED WHEN IT
FAILED TO FIND THAT TRIAL COUNSEL WAS
INEFFECTIVE FOR FAILING TO PRESENT THE
TESTIMONY OF CRAIG McCARGO, AND FOR
FAILING TO SEEK A WARRANT FOR HIS ARREST
AFTER HE FAIL[ED] TO APPEAR AT TRIAL,
DESPITE HAVING BEEN DULY SUBPOENAED.

WHETHER APPELLANT['S] PCRA COUNSEL WAS
INEFFECTIVE FOR FAILING TO RAISE ISSUES
REQUESTED BY APPELLANT IN LETTER TO
AMEND PCRA DATED SEPTEMBER 27, 2006.

6

> WHETHER APPELLANT['']S PCRA COUNSEL WAS
> INEFFECTIVE FOR FAILING TO PRESENT
> EVIDENCE ON [SIC] THE CONTRARY TO TRIAL
> COUNSEL['S] TESTIMONY THAT MR. McCARGO
> WAS A COMMONWEALTH WITNESS AND POLICE
> REPORTS TO THAT MATTER.

Appellant's Brief at 5-6.

See (Doc. 43-26 at 2-7, Memorandum Opinion).

On July 16, 2009, the Commonwealth filed a responsive brief in the

Pennsylvania Superior Court. See (Doc. 43-24 at 2, Brief for Appellee).

On September 16, 2009, the Pennsylvania Superior Court issued an Order

affirming the state trial court's PCRA determinations in all respects. See (Doc. 43-

26 at 2-7, Memorandum Opinion). In doing so, it specifically adopted the

reasoning of the state court's "thorough and well-reasoned opinions" on the issues.

Id.

On October 15, 2009, Robertson filed a pro se petition for allowance of

appeal in the Pennsylvania Supreme Court that raised each of the issues

previously raised in the state superior court plus additional ones. See (Doc. 43-28

at 2, Petition for Allowance of Appeal). On April 12, 2010, the Pennsylvania

Supreme Court issued a per curiam denial of that petition without elaboration.

On April 19, 2010, Petitioner filed the instant habeas corpus petition. (Doc.

7

1, petition).  He raises the following grounds for relief:

1.  Trial counsel was ineffective because he failed to object to the testimony of a police officer who related a statement made by eyewitness Vito Randazzo, which was hearsay.

2.  Trial counsel was ineffective for failing to interview and put on the witness stand, Petitioner's mother, Elizabeth Robertson, as an "alibi witness".

3.  Direct appeal counsel was ineffective because he failed to present after-discovered evidence, namely the fact that Commonwealth witness Mike Allen recanted his testimony after the trial.

4.  Trial counsel was ineffective for failing to disclose the existence of a conflict of interest insofar as trial counsel had worked for the county public defender's office, which employed the attorney who was originally appointed to represent Robertson but whom Robertson successfully had replaced prior to the preliminary hearing because Robertson was dissatisfied with him.

5.  Trial counsel was ineffective for failing to present at trial the testimony of Craig McCargo.

6.  Trial counsel was ineffective because he failed to interview Craig McCargo in preparation for trial.

7.  Trial counsel was ineffective because he failed to request a suppression hearing to preclude the Commonwealth's use of the jacket found at Robertson's residence containing blood with a DNA profile that matched the victim's DNA profile.

8.  Trial counsel was ineffective because he failed to request

a mistrial on the grounds that the jury could not hear the testimony of Mike Allen.

9.   PCRA counsel was ineffective for failing to call unidentified witnesses at the PCRA hearing.

10.  The Commonwealth did not present sufficient evidence to establish a reasonable doubt that Petition is guilty of the crimes for which he has been convicted.

(Doc. 1, petition).

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Petitioner that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeal, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA").  (Doc. 10).  On June 14, 2010, Petitioner returned the Notice of Election, along with an amended petition.  (Docs. 10, Notice of Election; 11, Amended Petition).

On July 7, 2010, a Show Cause Order was issued, directing that the petition be responded to as filed.  (Doc. 13).

On July 29, 2010, Petitioner filed a notice of appeal from this Court's July 6,

2010 Order denying Petitioner's motion for appointment of counsel. <u>See</u> (Doc. 19, Notice of Appeal).

By Order dated September 23, 2010, Petitioner's case was administratively closed pending the decision of Plaintiff's appeal. (Doc. 27).

By Order dated April 18, 2011, the stay was lifted and Petitioner's case was re-opened. (Doc. 37). Also, by separate Order of the same date, Petitioner's motion to dismiss his amended petition and proceed on his original petition was granted. (Doc. 36).

On July 22, 2011, a response to the petition was filed, and on August 12, 2011, a traverse was filed. (Docs. 43, 44).

Subsequent to the filing of the response and traverse, Petitioner filed a motion to amend/supplement his petition with the argument that the holding in <u>Martinez v. Ryan</u>, —— U.S. ——, 132 S.Ct. 1309, 182 L. Ed. 2d 272 (2012), overcomes Respondent's claim that three of Petitioner's issues are procedurally defaulted. (Doc. 45).

On April 8, 3013, Respondent filed a response addressing Petitioner's <u>Martinez</u> argument. (Doc. 53).

The petition is now ripe for disposition and, for the reasons set forth below, will be denied.

## II.    Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.    Exhaustion/Procedural Default

A district court may only grant a habeas petition if the petitioner has exhausted all available state remedies as to each federal claim raised in the petition. 28 U.S.C. § 2254(b)(1)(A); see also Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004). Exhaustion requires the petitioner "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... by invoking one complete round of the state's established appellate review process," including petitioning for discretionary appeal. O'Sullivan v. Boerckel,

11

526 U.S. 838, 844-845 (1999); Slutzker, 393 F.3d at 380 (citing Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)).  The burden is on the petitioner to establish that all available state remedies have been exhausted.  Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005).

Exhaustion is excused for futility if "there is an absence of available State corrective process," for example when an appeal or petition for review would be procedurally barred as untimely, or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(i)-(ii); Slutzker, 393 F.3d at 380 (citing Doctor, 96 F.3d at 681).  However, if exhaustion is futile because the petitioner failed to satisfy a state procedural requirement, then the petitioner has procedurally defaulted and the exhaustion requirement is not excused.  Coleman, 501 U.S. at 729-30; Slutzker, 393 F.3d at 380-81.  An unexhausted claim which may no longer be raised in the state courts because of a procedural bar, such as a prior waiver of the claim or the failure to raise the claim in a timely petition, is considered to have been defaulted.  Lambert v. Blackwell, 134 F.3d 506, 518 (3d Cir. 1997).  Federal courts may not entertain habeas petitions where the petitioner has procedurally defaulted because the procedural default "rests on independent and adequate state procedural grounds."  Coleman, 501 U.S. at 729-30; Slutzker, 393 F.3d at 380-81.

Procedural default may be excused only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 749-50; Slutzker, 393 F.3d at 380-81.  To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." Murray, 477 U.S. at 488.  Actual prejudice requires a petitioner to establish that an error caused him "actual and substantial disadvantage." Murray, 477 U.S. at 494 (citing United States v. Frady, 456 U.S. 152, 170 (1982)).

Respondent argues that Petitioner had the opportunity to raise his federal habeas claims Five, Seven, and Eight[2] in the state courts but failed to do so.  (Doc. 43 at 23-24).  Specifically, Respondent asserts that Claim Three, which alleges that direct appeal counsel's failure to present after-discovered evidence of a recantation by witness Michael Allen was ineffective, see (Doc. 1 at 21), was raised in the second amended PCRA petition filed in the trial court but was not presented to the Pennsylvania Superior Court for review on appeal of the trial court's denial of

---

[2]Although Respondent addresses the correct claims at issue, their corresponding numbers do not align with the original petition for writ of habeas corpus.  The actual claims at issue in the petition that correspond to Respondent's numeric references are contained at Claims Six, Eight, and Three.  The Court will reference these Claims as such from hereon.

PCRA relief.[3]  Similarly, Respondent contends that Claim Six, asserting that trial

counsel's failure to interview potential witness Craig McCargo constituted

ineffectiveness, see (Doc. 1 at 28), was not presented to either the state trial court

or the state Superior Court for consideration.[4]  Likewise, Respondents alleges that

Claim Eight, arguing that trial counsel's failure to request a mistrial on the grounds

that the jury could not hear witness Michael Allen's testimony constituted

ineffectiveness, see (Doc. 1 at 30), was not presented to either the state trial court

or state Superior Court for consideration.[5]

---

[3]Robertson, who voluntarily opted to prepare and file his own state court appellate briefs following the state trial court denial of PCRA relief, chose not to present federal habeas Claim Three within his brief filed in the Superior Court. See (Docs. 43-22, 43-23, Appellant's Brief).  For obvious reasons, the Pennsylvania Superior Court did not consider or render a determination on that particular question.

[4]Although Robertson's original pro se PCRA petition referenced the lack of a McCargo interview as a ground for relief, see (Doc. 43-13 at 2, pro se PCRA petition), the pro se petition was subsequently superseded by Robertson's filing of a counseled first amended PCRA petition and a counseled second amended PCRA petition, neither of which raised the issue of trial counsel's failure to interview McCargo. See (Docs. 43-14 at 2, amended PCRA petition; and Doc. 43-15, second amended PCRA petition).  As such the Superior Court was never asked to review this alleged basis for a determination of constitutionally-defective representation.

[5]Respondent contends that Robertson never alleged in any state court that the jury was unable to hear witness Michael Allen's testimony and that trial counsel's failure to argue that point was constitutionally deficient.  Instead, what Robertson did argue in the state trial and Superior Court was that: (a) trial counsel should have objected to the trial court's refusal to read back verbatim certain testimony given by Allen in response to a jury question about Allen's testimony; and (b) PCRA counsel

14

Because Pennsylvania's post-conviction relief statute imposes a one-year limitations period on collateral attacks, and because Robertson received a final judgment on his direct review claims on April 26, 2005, Respondent argues that Petitioner cannot now raise habeas Claims Three, Six, and Eight in state court, and as such, these federal claims are deemed exhausted but procedurally defaulted and must be denied in federal court. Id. Additionally, Respondent claims that Robertson has failed to allege or show cause and prejudice to overcome this default. Id.

In opposition to Respondent's procedural default argument, Petitioner relies on the holding in Martinez, 132 S.Ct. 1309, to attempt to overcome his procedural default of Claims Three, Six, and Eight.

---

was ineffective for failing to argue during the PCRA proceedings that trial counsel should have construed a juror's question about one portion of Allen's testimony as an indication that the jury was unable to hear Allen due to a noisy air conditioner in the courtroom. Notably, the state trial court definitively rejected both contentions, i.e. that trial counsel was ineffective for failing to insist on a verbatim reading of Allen's testimony during the jury deliberation stage and that PCRA counsel was ineffective for failing to argue that Robertson was entitled to a new trial because a juror had a question about Allen's testimony. It is important to note the patently flawed basis upon which Robertson's assumption of the jury's inability to hear Allen's testimony rests: he juxtaposes the trial judge's acknowledgment at the beginning of the trial that the air conditioner in the courtroom made some noise with a juror's question during deliberations, "Did Mike Allen say he never seen the jacket?", to arrive at the conclusion that the jury could not hear the witness's testimony, as opposed to having forgotten what the witness stated.

The Third Circuit Court of Appeals has explained the <u>Martinez</u> Rule as follows:

> In <u>Martinez</u>, the Supreme Court held that, where state law requires a prisoner to raise claims of ineffective assistance of trial counsel in a collateral proceeding, rather than on direct review, a procedural default of those claims will not bar their review by a federal habeas court if three conditions are met: (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel, (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard) and (c) the underlying claim of trial counsel ineffectiveness is "substantial," meaning "the claim has some merit," analogous to the substantiality requirement for a certificate of appealability. <u>Martinez</u>, 132 S.Ct. at 1318–20). The Court adopted this "equitable ruling" for several reasons. <u>Id</u>. at 1319. First, "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our justice system" vital to ensuring the fairness of an adversarial trial. <u>Id</u>. at 1317. Second, a prisoner cannot realistically vindicate that right through a claim of ineffective assistance of trial counsel without "an effective attorney" to aid in the investigation and presentation of the claim. <u>Id</u>. Finally, if the lack of effective counsel in an initial-review collateral proceeding could not excuse the federal procedural default bar, no court—state or federal—would ever review the defendant's ineffective assistance claims, given that they were first brought in that collateral proceeding. <u>Id</u>. at 1316.
>
> The majority in <u>Martinez</u> noted that it was propounding a "narrow," <u>id</u>. at 1315, "limited qualification" to <u>Coleman</u>, id. at 1319. Even so, what the Court did was significant. <u>See, e.g., id</u>. at 1327 (Scalia, J., dissenting) (criticizing <u>Martinez</u> as "a radical alteration of ... habeas jurisprudence"); <u>Lopez v. Ryan</u>, 678 F.3d 1131, 1136 (9th Cir.2012) ("<u>Martinez</u> constitutes a remarkable—if 'limited,'—development in the Court's equitable jurisprudence." (citation omitted)).

<u>Cox v. Horn</u>, 757 F.3d 113, 119 (3d Cir. 2014)

16

Applying the <u>Martinez</u> holding to Petitioner's Claims, numbered Three, Six, and Eighth, the Court notes, initially, that <u>Martinez</u> does not apply to allegations that PCRA counsel was ineffective in advancing the claim that direct appeal counsel in the state courts rendered constitutionally defective representation. <u>See</u> <u>Martinez</u>, 132 S.Ct. at 1319 (holding that the exception to <u>Coleman</u> is limited to underlying claims of trial counsel ineffectiveness); <u>Hodges v. Colson</u>, 711 F.3d 589 (6th Cir. 2013) ("Under <u>Martinez</u>'s unambiguous holding...ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel"); <u>Darrington v. Pa. Department of Corrections</u>, 2013 WL 596063, *2 (M.D. Pa. 2013) ("In <u>Martinez</u>, the United States Supreme Court stated that ineffectiveness of post-conviction counsel may serve to excuse the procedural default of claims alleging trial counsel ineffectiveness").  As such, Petitioner cannot rely on <u>Martinez</u> to overcome the procedural default of Claim Three, in which he argues that direct appeal counsel was ineffective for failing to present after-discovered evidence to the states courts in the form of an alleged recantation trial testimony offered by witness Michael Allen, and the claim remains procedurally defaulted.

In view of the passage of time since Robertson's conviction became final, it does not appear as though he could pursue any state court remedies at this time.

See Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000).  That is, any relief that may have been available to Robertson under the PCRA is now foreclosed by its one-year statute of limitations and Claim Three does not satisfy any of the three § 9545 exceptions.  See 42 Pa.C.S. § 9545.[6]  Petitioner has not alleged cause or prejudice.

---

[6]Pennsylvania prisoners must file their initial and subsequent PCRA petitions:

> ...within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

> (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii)     The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time provided in this section has been held by that court to apply retroactively.

(2)  Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days from the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

Nor has he demonstrated his actual innocence such that a lack of review by the court will constitute a fundamental miscarriage of justice.

As to Petitioner's remaining habeas Claims Six and Eight, the Court will dispense with an analysis of the procedural default and possible protection of these claims through <u>Martinez</u>, as the Court finds these claims may be denied on the merits, notwithstanding the failure of Petitioner to exhaust the state court remedies with respect to said claims. <u>See</u> 28 U.S.C. § 2254(a)(2).

### B.   **Merits**

"The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).[7] <u>See</u>

---

[7]Specifically, 28 U.S.C. § 2254(d)provides:

generally, <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 120-21 (2009); <u>Gattis v. Snyder</u>,

278 F.3d 222, 234 (3d Cir. 2002); <u>Moore v. Morton</u>, 255 F.3d 95, 104-05 (3d Cir.

2001).  The Supreme Court has held that the "contrary to" and "unreasonable

application" clauses of § 2254(d)(1) have independent meaning.  <u>Williams v.

Taylor</u>, 529 U.S. 362, 404-405 (2000).  As explained in <u>Bell</u>:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing law
> set forth in our cases, or if it decides a case differently than we have
> done on a set of materially indistinguishable facts.  The court may
> grant relief under the "unreasonable application" clause if the state
> court correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable ....

<u>Bell</u>, 535 U.S. at 694 (citations omitted).

---

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States;  or
>
> (2) resulted in a decision that was based on an  unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

In <u>Renico v. Lett</u>, 559 U.S.766 (2010), the United States Supreme Court, quoting <u>Williams</u>, explained that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id</u>. at 773.  Therefore, a federal court may not grant habeas relief simply because it has concluded in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly.[8]  <u>Id</u>.  Rather, the state court application must be objectively unreasonable.  <u>Id</u>.  <u>Renico</u> added that this distinction creates a substantially higher threshold for obtaining relief under § 2254 and imposes a highly deferential standard for evaluating state court decisions.  Simply put, "state-court decisions [must] be given the benefit of the doubt."  <u>Id</u>., <u>quoting</u> <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002) (per curiam).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  <u>Thomas v. Horn</u>, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be

---

[8]"Whether the trial judge was right or wrong is not the pertinent question under the AEDPA." <u>Renico</u>, 559 U.S. at 778 n.3.

presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary." Harrington v.

Richter, 562 U.S. 86 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that

the state court's determinations of factual issues are correct. 28 U.S.C. §

2254(e)(1). This presumption of correctness applies to both explicit and implicit

findings of fact, and is only rebutted by clear and convincing evidence to the

contrary. 28 U.S.C. § 2254(e)(1); Miller–El v. Cockrell, 537 U.S. 322, 341 (2003)

(stating that the clear and convincing standard in § 2254(e)(1) applies to factual

issues, whereas the unreasonable application standard of § 2254(d)(2) applies to

factual decisions); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

### 1.    **Claim Nine**

Petitioner's Claim Nine states, "with regards to the PCRA hearing Petitioner

requested counsel to call witness [sic], and PCRA court should have these witness

[sic] testify." (Doc. 1, p. 31). To the extent that Robertson claims that PCRA

counsel rendered constitutionally defective representation because he failed to call

certain unspecified witnesses during his PCRA hearing, although timely, this claim

is not cognizable here.

Habeas review "is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67–68;

Taylor v. Horn, 504 F.3d 416, 448 (3d Cir. 2007). As such, Robertson may obtain

habeas review only of federal constitutional claims.  28 U.S.C. § 2254(a).

"[A]lleged errors in collateral proceedings are not a proper basis for habeas relief."

Abu–Jamal v. Horn, 520 F.3d 272, 297 (2008) (citing Lambert v. Blackwell, 387

F.3d 210, 247 (3d Cir. 2004)).  In reviewing a habeas petition, a federal court is

limited to evaluating what occurred in the proceedings that resulted in the

petitioner's conviction.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.

1998) ("[W]hat occurred in the petitioner's collateral proceeding does not enter

into the habeas calculation.").

Further, prisoners do not have a federal constitutional right to counsel on

collateral review.  See Martinez, 132 S.Ct. at 1320 (declining to find a

constitutional right to effective assistance of counsel in state collateral

proceedings); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Tillet v. Freeman,

868 F.2d 106, 108 (3d Cir. 1989).  Therefore, an allegation of PCRA counsel's

ineffectiveness is not cognizable in federal habeas proceedings.[9]  28 U.S.C. §

---

[9]Although Pennsylvania provides a right to effective assistance of
post-conviction counsel, Commonwealth v. Albrecht, 720 A.2d 693, 699–00 (Pa.
1998), the state rule does not implicate the federal constitution. See Abu–Jamal v.
Horn, 2001 WL 1609761, *7 n.15 (E.D. Pa. 2001).

2254(i) ("The ineffectiveness or incompetence of counsel during ... [s]tate collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); accord Coleman, 501 U.S. at 756–57.

Accordingly, Robertson is not entitled to relief based on Claim Nine as it relates to the ineffectiveness of post-conviction counsel in his state collateral proceedings.

### 2.    Ineffective Assistance - Claims One, Two, Four - Eight

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test.  The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Jermyn, 266 F.3d at 282; Berryman v. Morton,

24

100 F.3d 1089, 1094 (3d Cir. 1996).  If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, Strickland, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F. Supp.2d 645, 648 (M.D. Pa. 2001).  A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794 (1987).  It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir. 1992).  "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal quotations and citation omitted).  In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before

25

the judge or jury." <u>Strickland</u>, 466 U.S. at 695; <u>Jermyn</u>, 266 F.3d at 283.  However,

"a court can choose to address the prejudice prong before the ineffectiveness prong

and reject an ineffectiveness claim solely on the ground that the defendant was not

prejudiced." <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006).  "The object of

an ineffective assistance claim is not to grade counsel's performance.  If it is easier

to dispose of an ineffective assistance claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed." <u>Id</u>.

When the Pennsylvania state courts reviewed the claims raised by Robertson,

<u>Strickland</u>'s familiar two-pronged test was the "clearly established federal law"

applicable to ineffective assistance of counsel claims.  Under Pennsylvania state

jurisprudence, a three-prong test is applied to ineffective assistance of counsel

claims, but is, in substance, identical to the <u>Strickland</u> test.[10]  See, e.g.,

---

[10]In the instant action, the state court, although not citing to <u>Strickland</u>,
reviewed Petitioner's ineffective assistance of counsel claims in accordance with
<u>Strickland</u>, as follows:

> Our standard of review when evaluating claims of ineffective assistance
> of counsel is well-settled.  Trial counsel is presumed effective, and the
> defendant bears the burden of proving otherwise.  <u>Commonwealth v.
> Lewis</u>, 708 A.2d 497, 500 (Pa. Super. 1998), <u>citing</u> <u>Commonwealth v.
> Williams</u>, 570 A.2d 75, 81 (Pa. 1990).  In determining whether counsel
> rendered ineffective assistance, the court must first determine whether
> the issue underlying the claim of ineffectiveness is of arguable merit.
> <u>Commonwealth v. DiNicola</u>, 751 A.2d 197, 198 (Pa. Super. 2000) (citing
> <u>Commonwealth v. Johnson</u>, 588 A.2d 1303, 1305 (Pa. 1991).  If the

Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751, 757 (Pa. 2001).  The Third

Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective

assistance of counsel claims is not contrary to Strickland.  Jacobs v. Horn, 395 F.3d

92, 107 n.9 (3d Cir. 2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness

claim that has been adjudicated on the merits is whether the Pennsylvania state

court decision involved an unreasonable application of Strickland.  Jacobs, 395

F.3d at 107 n.9; Werts, 228 F.3d at 204.

     Petitioner in this case advances no argument that the Superior Court decision

---

claim is without arguable merit, the Court's inquiry ends, as counsel will
not be deemed ineffective for failing to pursue a meritless issue. Id.
However, if the underlying claim is of arguable merit, the defendant
must establish that the course of action chosen by counsel had no
reasonable basis designed to effectuate the defendant's interests. Id.
Finally, the defendant must establish but for counsel's deficient
performance, the result of defendant's trail would have been different.
Id.

The test for ineffective assistance of counsel does not require us to use
the proverbial fine-tooth comb to cull through the record with the benefit
of 20-20 hindsight. Moreover, the fact that trial counsel's strategy may
not ultimately have led to an acquittal does not render the strategy legally
deficient. See e.g., Commonwealth v. Spotz, 896 A.2d 1191, 1235 (Pa.
2006); Commonwealth v. Rizzuto, 777 A.2d 1069, 1085 (Pa. 2001).
Using this standard we will address the specific claims of ineffectiveness
now before us.

(Doc. 43-20 at 5, and Doc. 43-21 at 10-11, PCRA Court opinions).

is contrary to extant United States Supreme Court precedent.  In this regard,

Petitioner does not maintain that the ineffective assistance test applied by the state

court is inconsistent with the test established in Strickland and developed in its

progeny.  Thus, each asserted instance of ineffective assistance will be considered

against this standard.

### a.   Claim One

Petitioner claims that trial counsel was ineffective for "failing to object to the

hearsay testimony of witness Vito Randazzo, introduced by Police."  (Doc. 1 at 17).

Specifically, Robertson claims that his trial counsel was constitutionally ineffective

for agreeing to allow Detective Christopher Rutter to testify to the jury about

eyewitness Vito Randazzo's description of the perpetrator rather than call

Randazzo to the stand to give the description himself.

The PCRA court opinion, adopted by the Pennsylvania Superior Court as its

own, found the following:

> As to the Defendant's claim that his trial counsel was ineffective for
> failing to object to hearsay evidence, the Defendant's trial counsel
> testified that he had his client's best interest in mind when he refrained
> from objecting to the testimony of the detective.  (See generally NT
> 10/09/07 N.T. at 36.)[11]  The detective testified that a witness

---

[11]At the PCRA hearing, trial counsel explained that he had wanted Randazzo's
observation about the assailant's hands to come into evidence at trial because

Randazzo described a person with black hands and Robertson had very light skin:

> **TRIAL COUNSEL:** The witnesses who gave descriptions said the assailant had very dark hands. Mr. Robertson has very light skinned hands for an African American man. And so I thought that was significant for us.

> \* \* \*

> **PROSECUTOR:** And in fact do you recall did you highlight for the jury what you believed was the discrepancy between your client's hands, the color of his skin versus the descriptions given at trial by those two witnesses [Amato and Randazzo] that you referred to earlier?

> **TRIAL COUNSEL:** We did do that. In terms of Mr. Amato, the other gentleman I can't think of his name, testimony was elicited from Mr. Amato and also the statement that the other man gave the police came out about the real dark hands. And then we had Mr. Robertson show the jury his hands during our case and then made the argument that "of course this can't be the same person."

> **PROSECUTOR:** Do you recall you also introduced and showed to the jury photographs of your client's hands at the time of trial?

> **TRIAL COUNSEL:** I think we did, yes. I think we did.

> \* \* \*

> **PROSECUTOR:** Now in response to Mr. Coyle's questions, there was some discussion of whether or not you -- whether or not Mr. Randazzo's description of the hand color of the assailant would have been – was desired or not desired on the part of the defense. I believe you testified initially on direct or excuse me in response to my questions that you wanted that because it supported your case in trying to highlight for the jury that your client's skin color was different than the description given by the witnesses, correct?

described the hands as very dark, whereas the Defendant's hands are not very dark.  The Defendant acknowledged that he consulted with his attorney and agreed that the testimony should be admitted to establish that someone with dark hands committed this crime. (10/9/07 N.T. at 108.)  The Defendant's trial counsel wanted to bring out this evidence to raise doubt in the minds of the jurors that the Defendant was really the attacker (10/9/07 N.T. at 73.).  While trial counsel's tactical decision may not have led to an acquittal, it was certainly reasonable and designed to effectuate the Defendant's best interest.

(Doc. 43-10 at 7-8).

In reviewing this claim here, it must be determined whether the state court's decision involved an unreasonable application of <u>Strickland</u>.  In doing so, this Court is mindful of the statement in <u>Strickland</u> that "[j]udicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all

---

**TRIAL COUNSEL:**  I thought it was very good for Mr. Robertson to have that evidence come in. As Mr. Coyle said, it corroborates what  Mr. Amato said about the black hands, the dark hands, whatever the words were what were used.  And Mr. Robertson, when I sat next to him we compared our hands and Mr. Robertson's hands were probably as light as or even lighter than mine were at that time in terms of skin color.  The purpose of that was to say look, members of the jury, two people said this attacker had black hands or dark hands or whatever the words they used. Mr. Robertson's  hands are not black, they're  very light.  He could not have been the assailant.  So to me that was a good thing to have both men say that.

(Doc. 43-1 at 36-37 and Doc. 43-2 at 72-73).

too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689; cf. Engle v. Isaac, 456 U.S. 107, 133–34 (1982).  In this instance, it is evident from the trial record and the record developed through the evidentiary hearing, that Robertson's counsel knew of the discrepancy in the color of the hands, but wanted Randazzo's observation about the assailant's hands to come into evidence at trial solely as a strategy to raise a doubt in the jury's mind, and to address it with an effort to defend his client.  Accordingly, it is clear that the state court determination that Robertson's claim that his counsel was ineffective for failing to object to the entry of the hearsay evidence did not merit relief was consistent with Strickland and was based on a reasonable determination of the facts in light of the evidence presented.  Thus, Petitioner is not entitled to relief on Claim One.

### b.     Claim Two

Petitioner states that "trial counsel was ineffective for failing to put Petitioner's mother on the stand to testify that he was staying with her rather than his wife during the time of the incident." (Doc. 1 at 19).

In addressing this claim, the state courts found the following:

Trial counsel testified that he did not view the testimony of

31

Defendant's mother as establishing an alibi. We agree. In October of 1999, the Defendant and his wife were experiencing marital difficulties. As a result of this discord, the Defendant stayed at his mother's New Jersey home on some occasions, but not exclusively. Moreover, testimony established that the Defendant frequently visited the home he established with his wife and children. As to the specific events that occurred on October 17, 1999, the Defendant's mother could not and did not state that the Defendant was in New Jersey at the time the A&M Pizza store was robbed. As we see it, the testimony of the Defendant's mother would have added little to this trial. Even if the Defendant's mother would have credibly testified that the Defendant stayed at her house in New Jersey "most of the time" during October of 1999, there was still ample opportunity for him to participate in the A&M Pizza store robbery and leave his jacket at the home he shared with his wife and children in Lebanon. We conclude that the Defendant's counsel was not ineffective for failing to call the Defendant's mother to provide what we consider to be only minimally relevant information.

(Doc. 43-20 at 7).

The state courts' resolution of this claim did not involve an unreasonable application of the governing federal law. At the PCRA hearing, both Robertson and his mother testified that Robertson was residing with his mother in Willingboro, New Jersey on October 17, 1999. the date of the criminal incident. See (Doc. 43-18 at 46-99 and Doc. 43-19 at 1-11). At no time, however, did either witness testify that on the specific day and time that the victim was assaulted and robbed in Lebanon that Robertson was physically present in his mother's residence. Id. In fact, Robertson's PCRA counsel explicitly disavowed any such assertion of

32

an alibi:

> **PCRA COUNSEL:** That's really not what we want to present Mrs. Robinson's testimony for. It's not an alibi, I agree.
>
> **THE COURT:** It's not an alibi?
>
> \* \* \*
>
> **PCRA COUNSEL:** I don't think there's an alibi issue here, Your Honor, because I'm not aware that the Defendant ever raised the issue that he was in New Jersey at the time of the crime. That's all based on my reading of the record.

See (Doc. 43-17 at 19-20). Likewise, Robertson's trial counsel testified at the PCRA hearing that Robertson never told him that he, Robertson, was in New Jersey rather than Lebanon on the day and time that the crime was committed. (Doc. 43-18 at 25).

Mrs. Robertson's testimony at the PCRA hearing was simply that Robertson resided at her house during the month of October 1999 and that he: (1) left the house during the daytime; (2) was not under lock and key; and (3) was free to come and go from the residence as he pleased. See (Doc. 43-18 at 49-50). Robertson's mother also testified that her son had children that lived with his wife in Lebanon County and inferred that during the relevant time period he occasionally visited them in Lebanon County. Id.

33

Although Mrs. Robertson's proffered testimony, when viewed in a vacuum, might conceivably be construed as potentially helpful to her son's case insofar as it identified for the jury a location where the defendant might possibly have been on October 17, 1999, its inclusion at trial would not have produced a reasonable probability of a different outcome. First, as noted above, the defense never asserted that Robertson was at his mother's house or with his mother at the time of the crime. Second, Robertson's mother's testimony would not have precluded a finding that Robertson committed the crimes. Specifically, even if the jury had heard Mrs. Robertson's testimony in full, it still could have rationally concluded based on the evidence of record that: (1) Robertson woke up at his mother's Willingboro residence on the morning of Sunday, October 17, 1999; (2) drove to Lebanon, Pennsylvania and committed the crimes between 8:00 and 9:00 p.m. that day; (3) returned to his mother's residence later that evening; and (4) placed his New York Giants jacket in a closet of the residence that he shared with his wife sometime between the time of the incident and the time that it was discovered by police. Mrs. Robertson's testimony was not inconsistent with the jury's guilty verdicts. Given the fact that Robertson never claimed that he was physically at his mother's house when the crimes occurred, the presentation of Mrs. Robertson's testimony would not have created a reasonable probability that Robertson would

34

have succeeded at trial.  As such, the state courts' decision reasonably applied the law established in <u>Strickland</u>, and thus, Petitioner's ineffectiveness assistance of counsel Claim two is without merit.

    **c.**    **<u>Claim Four</u>**

Petitioner states that "trial counsel was ineffective because he failed to reveal to Petitioner a conflict of interest." (Doc. 1 at 23).  Specifically, Petitioner contends that trial counsel was ineffective for failing to disclose the existence of a conflict of interest insofar as trial counsel had worked for the county public defender's office, which employed the attorney who was originally appointed to represent him, but whom he successfully had replaced the day before the preliminary hearing because of dissatisfaction. <u>Id</u>.  Petitioner concludes that he was "prejudiced because there was a conflict of interest that adversely affected his lawyer's performance because (1) they both worked for the same Public Defender's Office and (2) counsel did not have time to investigate witnesses or call said witnesses." <u>Id</u>.

A review of the record for the presentation of this claim to the state courts reveals that the first mention of a conflict of interest is in Petitioner's second PCRA petition, and reads as follows:

    Defendant's trial counsel, Mr. Arnold, was ineffective in that he

had a conflict of interest which he failed to reveal to Defendant. Specifically, Mr. Arnold worked, or had previously worked for the Lebanon County Public Defender, who was actively representing one of the Commonwealth's witnesses in a separate cause of action. Mr. Arnold failed to reveal this fact to Defendant in order to obtain his consent. Such representation violated the Pennsylvania Rules of Professional Conduct, including Rules 1.7, 1.9, and 1.10.

(Doc. 43-15 at 4, Second Amended Motion for Post Conviction Collateral Relief).

As such, the state court addressed the issue as a "conflict of interest based upon a

fellow public defender's previous representation of a witness." See (Doc. 43-21).

Consequently, the issues as framed by Petitioner in his federal petition has never

been presented to the state courts, and he has failed to exhaust his state court

remedies with respect to this claim.

"When a claim is not exhausted because it has not been 'fairly presented' to

the state courts, but state procedural rules bar the applicant from seeking further

relief in state courts, the exhaustion requirement is satisfied because there is 'an

absence of available State corrective process.'" 28 U.S.C. §2254(b); see also

Werts v. Vaughn, 228 F.2d 178, 192 (3d Cir. 2000).  It must be clear from existing

state law and state court decisions that an avenue is foreclosed before exhaustion

will be excused.  Lines, 208 F.3d at 163.

In such cases applicants are considered to have procedurally defaulted their

claims and federal courts may not consider the merits of such claims unless the

36

applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. See Coleman, 501 U.S. 722; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); see also, Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001); Keller v. Larkins, 251 F.3d 408, 415 (3d Cir.) cert. denied, 122 S.Ct. 396 (2001); Lines, 208 F.3d at 164-66.

To show cause, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements. Murray v. Carrier, 477 U.S. 478, 488 (1986); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir.) cert. denied, 504 U.S. 944 (1992). "Prejudice" will be satisfied if the habeas petitioner shows that the outcome was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993); Coleman, 501 U.S. at 750. In order to demonstrate a fundamental miscarriage of justice, a petitioner must show that he is actually innocent of the crime by presenting new evidence of innocence. Schlup v. Delo, 513 U.S. 298 (1995); Keller, 251 F.3d 408.

As previously discussed, it does not appear that Petitioner could pursue any state court remedies at this time in light of the PCRA's one-year statute of limitations, and his failure to satisfy any of the three §9545 exceptions. See 42 Pa.C.S. § 9545. Further, he has not alleged cause or prejudice. Nor has he

demonstrated his actual innocence such that a lack of review by the court will constitute a fundamental miscarriage of justice.

### d.    Claims Five and Six

Petitioner claims that trial counsel was ineffective for "fail[ing] to interview Craig McCargo" and "failing to present the testimony of Craig McCargo", a witness for the Commonwealth who was scheduled to provide testimony that would have been damaging to Petitioner. (Doc. 1 at 24-29).

The state courts treated the "failure to meet McCargo" and "failure to use McCargo as a trial witness" as one in the same claim and denied it as lacking merit as follows:

> In this case, the Defendant's trial counsel believed that Mr. McCargo would have been a hostile witness to the Defense and also that there was a great potential that Mr. McCargo would be damaging to the Defendant's case (10/09/07 NT at 51-52). The Defendant's trial counsel did have impeachment information to impugn the credibility of Craig McCargo had he been called by the Commonwealth (10/09/07 NT at 50); however, it would have made no sense for the Defendant's trial counsel to call [the] witness simply for the sake of impeachment when the witness never testified against the Defendant. Additionally, the Defendant's trial counsel made his decision not to call Craig McCargo after consulting with the Defendant and obtaining the Defendant's consent not to call Mr. McCargo (10/09/07 NT at 51-52). The Defendant himself admitted to a discussion with his trial counsel in reference to calling Mr. McCargo as a witness (10/09/07 NT at 105).

> We cannot and will not find that trial counsel was ineffective for a

38

> strategic decision that he made at trial simply because the Defendant,
> now in hindsight, thinks that it was a bad decision. Accordingly, we
> find that the Defendant's trial counsel was not ineffective for failing to
> present the testimony of Mr. McCargo.

(Doc. 43-21 at 17-18).

At the PCRA hearing, trial counsel testified that: (1) McCargo had given statements to the police that were adverse to his client; (2) he believed at trial that McCargo would have been a hostile witness to the defense; (3) he believed at trial that there was a great potential for McCargo to give testimony that was damaging to Robertson's case; and (4) he perceived McCargo's credibility to be impeachable because of inconsistencies in his prior statements, rendering any testimony he gave of questionable value. See (Doc. 43-18 at 1-3)

After the Commonwealth decided not to utilize McCargo as a witness, trial counsel made the same decision, but only after consulting with Robertson and obtaining Robertson's consent on the point. Id. Robertson corroborated this testimony by testifying at the PCRA hearing that he had a discussion with his attorney regarding whether or not to call McCargo as a witness. See (Doc. 43-19 at 6).

Given the foregoing facts of record, the state courts reasonably determined that trial counsel had a reasonable basis for not calling McCargo as a witness.

Counsel anticipated that McCargo's testimony would harm rather than help his client's cause and there was no need to call him as a witness merely for the sake of impeachment when he did not end up testifying against Robertson. Consequently, it cannot be found that counsel's decision was so unreasonable that no competent counsel would have chosen it. See Bond v. Beard, 539 F.3d 256, 285 (3d Cir. 2008) (explaining that counsel's performance is measured against the standard of "reasonably effective assistance" as defined by "prevailing professional norms"). Because Petitioner cannot demonstrate prejudice as a result of counsel's inaction, that is, that the outcome of his case would have been different, as a result of counsel's failure to present the testimony of Craig McCargo at trial, Petitioner's ineffective assistance of counsel claim fails. See Strickland, 466 U.S. at 697 (holding that an ineffective assistance claim will be dismissed if the petitioner makes an insufficient showing under either the performance or prejudice prongs); McAleese v. Mazurkiewicz, 1 F.3d 159, 170–71 (3d Cir. 1993) (determining that the court is not required to address the issue of counsel's performance if it determines that no prejudice resulted from counsel's conduct).

e.     **Claim Seven**

Petitioner states that "trial counsel was ineffective because he fail[ed] to request a suppression hearing." (Doc. 1 at 29). Specifically, Petitioner claims that

trial counsel was ineffective because he failed to request a suppression hearing to

preclude the Commonwealth's use of the jacket found at his residence containing

blood with a DNA profile that matched the victim's DNA profile.

The PCRA Court's findings concerning Petitioner's challenge to counsel's

failure to challenge the search warrant, which were adopted by the Pennsylvania

Superior Court, are as follows:

> The Defendant argues that his trial counsel was ineffective for failing
> to challenge the search warrant on the basis that the Commonwealth
> did not have probable cause to obtain the search warrant. (See
> Supplemental Concise Statement of Errors Complained of an Appeal
> at ¶4). We disagree. Based upon the affidavit of probable cause, there
> was justification for the District Magisterial Judge to sign the search
> warrant.
>
> The standard for evaluating whether probable cause exists for the
> issuance of a search warrant is the "totality of the circumstances" test
> set forth in Illinois v. Gates, 462 U.S. 213 (1983), and adopted by the
> Pennsylvania Supreme Court in Commonwealth v. Gray, 503 A.2d
> 921, 925 (Pa. 1985). Under the totality of the circumstances test, a
> magistrate is to make a "practical, common-sense decision whether,
> given all the circumstances set forth in the affidavit before him,
> including the 'veracity' and 'basis of knowledge' of person supplying
> the hearsay information, there is a fair probability that contraband or
> evidence of a crime will be found in a particular place."
> Commonwealth v. Jones, 668 A.2d 114, 116-17 (Pa. 1995)(quoting
> Gray, 503 A.2d at 925). In applying the "totality of circumstances
> test", we are limited to consider only what was within the "four
> corners" of the search warrant affidavit itself. See, e.g.,
> Commonwealth v. Ryerson, 817 A.2d 510 (Pa. Super. 2003).
>
> The information offered to establish probable cause must be viewed in

41

a common sense, non-technical manner and deference must be accorded the issuing magistrate. The duty of the court reviewing the decision is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Id.

We have reviewed the instant search warrant affidavit in light of the law articulated above. As we did so, we reached the conclusion that the affidavit set forth five basic facts the Commonwealth relies upon to establish probable cause:

(1)   On October 17, 1999 around 8:45 p.m. a robbery occurred at the Lebanon Pizza located at 7th and Lehman Streets. John Amato was stabbed three times during the course of the robbery, and his blood got onto the clothes of the Defendant. The Defendant was described as wearing a dark coat and a stocking cap. The Defendant used a white handled non-serrated paring knife to stab Mr. Amato and took the knife with him.

(2)   Mike Allen stated that the Defendant was at his home located at 438 North 5th Street prior to the robbery and that the Defendant left Mr. Allen's home at around 8:15 p.m. He was wearing a blue New York Giants coat with black lining and a stocking cap.

(3)   The Defendant returned to 438 North 5th Street about a half hour later and was out of breath and threw a large amount of cash on the kitchen table. He was carrying a New York Giants coat rolled up in a ball. He told Mr. Allen that he had robbed a pizza place.

(4)   Mr. Allen saw the same New York Giants coat at the residence of the Defendant and his girlfriend at 1001 Spruce Park.

(5)   The Defendant resides with his girlfriend at 1001 Spruce

42

Park.

The Defendant argues that the search warrant was not supported by probable because he did not fit the description provided and the informants gave inconsistent statements. (See Supplemental Concise Statement of Errors Complained of an Appeal at ¶ 4). We find no support for either one of the Defendant's arguments. Probable cause is supported not only with Defendant's own confession to Mr. Allen that he robbed a pizza place and his showing of a wad of money to Mr. Allen, but also by the victim's own observation of the Defendant. Additionally, there is Mr. Allen's personal observation fo the Giants jacket at the Defendant's residence. We find that ample probable cause exists to support the search warrant.

In addition, we find no meaningful inconsistencies in the statements provided to police. Even the times of day provided by Mr. Allen of the Defendant's leaving and returning to his home are consistent with the time of day that the robbery was committed.

Based on the totality of the circumstances disclosed in the affidavit, we find that it was reasonable for the issuing authority to infer that there was fair probability that the Defendant's residence contained a New York Giants coat or a black coat with blood on it, a stocking cap, a white handled non-serrated paring knife, and bloody U.S. Currency. Further, the Affidavit established that the items to be searched for and seized were evidence of the Lebanon Pizza robbery for which the Defendant was the culprit. Therefore, the Affidavit contained sufficient information to establish probable cause to search 1001 Spruce Park, so as to sustain the issuance of a search warrant.

(Doc. 43-21 at 13-16).

The Pennsylvania state courts determined that because there was no merit to

Robertson's suppression argument, counsel cannot be deemed ineffective for

failing to request a suppression hearing.  This demonstrates that the state court

utilized the correct governing principles and reasonably applied them to

Petitioner's case.  It is well settled that counsel is not ineffective for failing to raise

baseless issues.  See United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999);

Commonwealth v. Wilkerson, 416 A.2d 477, 479 (Pa. 1980).

### f.    **Claim Eight**

Petitioner claims that "trial counsel was ineffective for not requesting a new

trial or remedy to satisfy a juror not knowing, for whatever reason, what witness

Mike Allen testified to at trial." (Doc. 1 at 30).

The state courts addressed this claim as follows:

The Defendant alleges on appeal that PCRA counsel was ineffective
for failing to raise the issue requested by the Defendant in a letter to
amend the PCRA dated September 27, 2006.  (See Supplemental
Concise Statement of Errors Complained of on Appeal at ¶ 7).  We
note that the Defendant filed a Second Amended Petition for Post
Conviction Collateral Relief on March 26, 2007 which alleged 15
issues of ineffective assistance of counsel.  The only letter of record
between Mr. Coyle and the Defendant is dated March 19, 2007 and
raises eighth requests.[12]  Of the eight requests made by the Defendant,
Mr. Coyle honored all but two of the requests, which are as follows:

---

[12]Even if this is not the letter to which the Defendant is referring, we have no
doubt that we would have denied any additional issues raised in the Defendant's
PCRA Petition, considering the weight and sufficiency of the evidence presented
against the Defendant at trial and the already lengthy list of issues raised by the
defendant and denied by this court.

(1)   Change the allegation that "Mr. Arnold was ineffective for failing to object or otherwise reserve for appeal the trial judge's refusal of the jury's request to read back the testimony of Commonwealth witness – Mike Allen" to the allegation that the a [sic] juror did not know for whatever reason what the witness testified to and trial counsel was ineffective for not requesting a new trial or a remedy to satisfy the juror's needs.

(2)   Change the allegation that "Mr. Arnold was ineffective, in that he failed to request a Franks Hearing in order to contest the validity of the search warrant by raising the issue that Mr. Allen was coerced into giving an incriminating statement against the Defendant" to the allegation that the police made a false statement knowingly and intelligently or with reckless disregard for the truth, and this false statement was included in the search warrant.

We believe that these issues raised by the Defendant only pertain to the semantics of his PCRA petition and raise no legitimate arguments. Had PCRA counsel addressed the issues as suggested by the Defendant, there would have been no difference in our decision to deny the petition.

As to the issue of Mike Allen's testimony, we would have denied the Defendant's claim regardless of counsel's phraseology of the issue. Reading back portions of a witness' testimony is left to the discretion of the Trial Judge.  In Pennsylvania, it is not improper for a Trial Judge to refuse to read back a portion of testimony because doing so could unduly emphasize one portion of testimony at the expense of others.  Commonwealth v. Small, 741 A.2d 666 (Pa. 1999).  In this case, had Trial Counsel asked to repeat only portions of Mike Allen's testimony, we likely would have refused such a request. At a minimum, we would have granted a request by the Commonwealth to read back the entirety of Mr. Allen's testimony in order to give balance to what was requested by the Defendant. This would have

45

been a waste of time and would not have aided the Defendant.

Additionally, we would not have found that trial counsel was ineffective for failing to move for a new trial, simply because we would never have granted such a motion on the grounds suggested by the Defendant. <u>Commonwealth v. Johnson</u>, 588 A.2d 1303, 1305 (Pa. 1991) (holding that counsel will not be deemed ineffective for failing to pursue an unmeritorious issue). A new trial may only be granted when the jury's verdict is against the clear weight of the evidence or when the judicial process has caused a serious injustice. <u>Educ. Resources Institute, Inc. v. Cole</u>, 827 A.2d 493 (Pa. Super. 2003); <u>Burton-Lister v. Siegal, Sivitz and Lebed Assocs.</u>, 798 A.2d 231 (Pa. Super. 2002), appeal denied, 808 A.2d 568 (Pa. 2002). As affirmed by our Superior Court, there was sufficient evidence to convict the Defendant of the crime in this case. 538 MDA 2004. Further, we do not believe that one juror's potential confusion about an aspect of Mr. Allen's testimony creates a serious injustice; particularly because Mr. Allen's statements were far more helpful to the Commonwealth than they were to the Defendant.

As to the Defendant's issue of the search warrant, we find no credible evidence that police made a false statement or that Michael Allen was coerced by police into giving a false statement. Further, nothing leads us to believe that trial counsel was aware of any possibility that the search warrant was based upon a false statement or a coerced statement. The search warrant was prepared by Officer Chris Rutter who testified at trial and was obviously found to be credible by the jury. Thus, we have no reason to believe that defendant's trial counsel would have reason to believe that he based his search warrant upon false information.

In our opinion, PCRA counsel did not prejudice the Defendant in failing to frame the issue on appeal exactly as requested by Defendant. We would not have changed our decision, regardless of counsel's framing of the issues.

46

(Doc. 43-21 at 18-21).

As is clear from the state court record, even if Robertson's trial counsel had couched the trial counsel ineffectiveness claim in the terms of "failure to address a juror's inability to hear testimony of Mike Allen", as Petitioner requested, relief from judgment of sentence would have still been denied.  A finding by the state court that, couched in either term, the claim has no merit, negates any claim of counsel's ineffectiveness, as counsel cannot be found ineffective for failing to raise a baseless issue.  Saunders, 165 F.3d at 253.

### 3.    Claim Ten

Petitioner states that "the Commonwealth did not present sufficient evidence to establish a reasonable doubt that Petitioner is guilty of the crimes for which he has been convicted."  (Doc. 1 at 32).

In its analysis of the sufficiency of the evidence, the Pennsylvania Superior Court was guided by the following standard of review:

> In evaluating a challenge to the sufficiency of the evidence, the test is whether, viewing all evidence admitted at trial, together with all reasonable inferences drawn therefrom, in a light most favorable to the Commonwealth as verdict winner, the trier of fact could have found that the defendant's guilt was established beyond a reasonable doubt. Commonwealth v. Capo, 727 A.2d 1126, 1127 (Pa. Super. 1999).

(Doc. 43-12 at 9).

The Superior Court's analysis is clearly in accord with applicable federal law. Sufficiency of the evidence claims are governed by Jackson v. Virginia, 443 U.S. 307 (1979), in which the Supreme Court held that the question for habeas courts is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.

When historical facts support conflicting inferences, the habeas court must presume that the trier of fact resolved those conflicts in favor of the prosecution. Id. at 326. The habeas court must also consider the types of evidence the state courts deem relevant to prove the elements of the offense at issue because the elements of the criminal offense are defined by state law. Id. at 324 n.16.

Among other things presented to the jury and reviewed by the Superior Court was the following evidence: (1) Michael Allen's testimony at trial that: (a) he was with Robertson in a residence only blocks away from the crime scene immediately prior to the assault; (b) Robertson left Allen's residence around the time of the assault and returned 30 to 45 minutes later with a large amount of cash rolled up in a dark New York Giants jacket; (c) Robertson acted suspiciously upon his return to Allen's house and refused to explain the source of the money; (d) Allen saw the same jacket two days later at the residence that Robertson shared with his wife in

Lebanon; and (e) Robertson subsequently instructed him that "if anybody asks you about that night, don't say nothing" (8/6/03 N.T. at 59-103); (2) Robertson's absence from Allen's home coincided with the time that A&M Pizza was robbed and that the victim was stabbed and slashed; (3) both the victim and eyewitness Vito Randazzo described the attacker as having black skin and Robertson is an African American; (4) the victim saw his assailant exit the restaurant's front door wearing a dark jacket and turn left, which was in the direction of Allen's residence; (5) Robertson's whereabouts during the time of the assault were unaccounted for; (6) Ralph Bartlett, who resided in close proximity to Michael Allen's residence, observed that a wind chime had been torn off a set of chimes on that block on the night in question and recovered after the assault next to the cash register at the victim's restaurant; (7) Pennsylvania Department of Transportation records indicated that Robertson resided at 1001 Spruce Park; (8) a lawful search by police of Robertson's residence at 1001 Spruce Park yielded the discovery of a bloody dark New York Giants jacket; (9) subsequent forensic testing of that jacket found at Robertson's residence determined that the blood on the jacket had a DNA profile that matched the DNA profile of the victim; and (10) Robertson fled the jurisdiction after learning that the police wanted to talk with him and remained a fugitive for several years. (Doc. 43-12 at 9-13).

49

The Pennsylvania Superior Court, citing Pennsylvania law, determined that

> [f]or the Commonwealth to prevail in a conviction of criminal attempt
> to commit homicide, it must prove beyond a reasonable doubt that the
> accused with a specific intent to kill took a substantial step towards
> that goal. Commonwealth v. Hobson, 413 Pa. Super. 29, 604 A.2d
> 717, 719-720 (1992). We have held that a specific intent to kill can be
> inferred from the circumstances surrounding an unlawful killing.
> Commonwealth v. Geathers, 847 A.2d 730, 737 (Pa. Super. 2004).
> Moreover, specific intent to kill may be inferred from the fact that the
> accused used a deadly weapon to inflict the injury to a **vital** part of the
> victim's body. Id.

(Doc. 43-12 at 11) (emphasis in original).

The Superior Court found there was sufficient evidence to support the

criminal intent to commit homicide conviction, stating:

> Appellant argues specifically that the Commonwealth did not present
> any medical testimony proving that the areas of the victim's body that
> were stabbed were vital. Consequently, Appellant contends, the jury
> was presented with insufficient evidence to convict Appellant of this
> charge. We find Appellant's argument that expert testimony was
> required to prove that the injuries were to vital areas unconvincing.[13]

---

[13]Although we address the Appellant's contention that the Commonwealth
cannot prove the areas injured were vital without further expert testimony, we note
that this is not an essential element for a conviction of criminal attempt to commit
homicide. Proving that the Appellant used a deadly weapon to inflict injury to the
victim's vital areas is just one way to prove specific intent to kill. Specific intent to
kill could also be inferred from other surrounding circumstances of the unlawful
attack. For example, the evidence viewed in the Commonwealth's favor shows that
the Appellant crept from behind and stabbed an unknowing, defenseless victim before
demanding money. We conclude that this evidence is also sufficient to prove that the
Appellant acted with a specific intent to kill.

The purpose of expert testimony is to assist the fact-finder in grasping complex issues not within the knowledge, intelligence, and experience of the ordinary layman. Commonwealth v. Begley, 566 Pa. 239, 780 A.2d 605 (2001). We cannot agree that determining what areas of the body are vital is a complex issue that would require medical testimony. We believe that an ordinary layman could conclude without expert testimony that Amato's head, stomach, and neck are vital areas. Beyond this, the parties stipulated that injuries to these areas placed Amato at immediate risk of death, further evidencing these areas were vital to Amato's survival. N.T. Trial, at 55. Based on the evidence presented at trial and without further expert testimony, we find that the jury could infer that the areas injured were vital.

In light of the above, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Appellant with a specific intent to kill took a substantial step towards that goal. The evidence, viewed in the Commonwealth's favor, reveals that Appellant used a deadly weapon, a knife, to inflict injuries to vital areas of a victim's body, Amato's head, stomach, and neck. Id. at 25-26. This is sufficient to prove specific intent to kill. This inference is further supported by the fact that the attack went far beyond what would have been necessary to accomplish the robbery. Furthermore, evidence of the infliction of the injuries to Amato is sufficient to prove that a substantial step toward the goal of killing the victim occurred.

Appellant also argues that the evidence was insufficient to support his conviction of possessing instruments of crime. Possessing Instruments of Crime is defined as follows:

§ 907. Possessing instruments of crime
(a) CRIMINAL INSTRUMENTS GENERALLY.-A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907(a). Accordingly, the Commonwealth must prove beyond a reasonable doubt that the defendant (1) possessed any

51

instrument of crime and (2) with intent to employ it criminally.

Appellant does not challenge the sufficiency of the evidence to prove the intent requirement of the statute. Rather, he claims that the evidence was not sufficient to prove the first element of the statute, that he possessed an instrument of the crime. Specifically, referencing the statutory definition of the term "instrument of crime," Appellant asserts that the Commonwealth must prove that the knife used in the attack was an instrument commonly used for criminal purposes. Appellant contends that because the Commonwealth failed to present evidence that the knife was an instrument commonly used for criminal purposes, the conviction on this count is unsupportable. We disagree.

Appellant's assertion that the Commonwealth must prove that the knife was commonly used for criminal purposes arises from a discrepancy over the definition of "instrument of the crime." To put Appellant's argument into proper context, we acknowledge that prior to 1995 the statutory definition of instrument of crime was as follows:

> (2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Act of December 6, 1972, P.L. 1482, No. 334, § 1 (emphasis added). However, in 1995, the definition of instrument of crime was modified, apparently in response to the Pennsylvania Supreme Court's decision in Commonwealth v. Ngow, 539 Pa. 294, 652 A.2d 305 (1995), by deleting "commonly" from the definition of instrument of the crime. Consequently, the amended definition read:

> (2) anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Act of July 6, 1995, P.L. 238, No. 27, § 1. On paper, the above amendment was short-lived, as the following year the legislature again

amended section 907 and appeared to insert "commonly" back into the definition of an instrument of crime in 1996. The post-1996 amendment left the definition as follows:

> "Anything **commonly** used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."

(emphasis added) Act of July 11, 1996, P.L. 552, No. 98, § 1. However, despite the re-insertion of the term "commonly" into the definition of instrument of crime, a panel of this Court concluded that this re-insertion was an oversight of the legislature and not an intended amendment to the definition. Relying upon provisions of the Statutory Construction Act, this Court, in Commonwealth v. Magliocco, 806 A.2d 1280, 1284 (Pa.Super.2002), appeal granted, 573 Pa. 689, 825 A.2d 638 (2003), concluded that the word "commonly," as it appears in the text of the 1996 amendment, was not an expression of the legislative will and is a legal nullity. Id. at 1285. Thus, according to Magliocco, the controlling definition of "instrument of crime" remains:

> Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

Id. As such, Appellant's argument that the Commonwealth must prove a knife is an instrument commonly used in crime is contrary to the express holding in Magliocco, and, therefore, is foreclosed.

Having clarified the statement of the law on this issue, we now conclude that the evidence was sufficient to prove the defendant possessed an instrument of crime with the intent to employ it criminally. Viewing the evidence in the light most favorable to the Commonwealth, Appellant utilized a knife to perpetrate a robbery and a vicious attack on Amato. A knife clearly fulfills the above enumerated definition of an instrument of crime. Furthermore, using

53

the knife to perpetrate the robbery and a vicious attack proves intent to employ the instrument criminally.

(Doc. 43-12 at 11-13).

The state court's analysis is cogent and entirely consistent with federal standards. Robinson is not entitled to relief on this claim.

## III.   Conclusion

The Court concludes that the state courts' decisions in this case were reasonable both in their application of federal law and in their determination of factual issues.  Thus, the petition for writ of habeas corpus will be denied in its entirety.  For the reasons discussed above, the Court also finds that Petitioner has not "made a substantial showing of the denial of a constitutional right," and will not issue a certificate of appealability.[14]

---

[14]Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

A separate Order will be issued.


Dated: October 3, 2014

**United States District Judge**

_____

ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will issue.